Charles Edward TAMMINEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 103–83.

Court of Criminal Appeals of Texas, En Banc.

July 20, 1983.

Charles Campion, Brock Huffman, San Antonio, for appellant.

David K. Chapman, San Antonio, for Judge Barrera.

Sam D. Millsap, Jr., Dist. Atty. and Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

With stinging rebukes to both prosecutor and trial judge in this cause, the San Antonio Court of Appeals affirmed the judgment of conviction for aggravated rape, but vacated the sentence of confinement for ninety nine years and remanded the cause to the trial court for assessment of punishment by another district judge. *Tamminen v. State,* 644 S.W.2d 209 (Tex.App.—San Antonio, 1982). We granted petition for discretionary review presented, respectively, by appellant and the State in order to assay and to evaluate the extraordinary action taken by the appellate court.

■ While the court of appeals possesses the power and authority to render the judgment it did, e.g., Articles 44.24(b) [1] and 44.-25,[2] V.A.C.C.P., for reasons about to be given we are constrained to find that the record does not justify its ruling.

This unhappy affair began when *ex parte* the prosecuting attorney, in his words, "furnished the *Court* " [3] with a thirty page compilation of material pertaining to the "Bandidos Motorcycle Club" and its members, collected by the Texas Department of Safety.[4] Because he had been told by his source that its content is "classified information," not for release to "the general public," the prosecutor did not provide appellant's attorneys with a copy of it. He "believed" (but was "not sure") he informed the judge of the court that the material was "not to be shared with anybody else," but was "sure" that the judge "would know that." [5] When on April 1, 1981, attorneys for appellant went to the trial judge's chambers—apparently also *ex parte*—"to examine the presentence report and to discuss punishment with the Judge," they saw the compilation on his desk and made mention of it, but were told by the judge that they "weren't supposed to see that." The punishment hearing was held the following day.

To the enhancement allegation of a prior felony conviction, appellant pled true. The DPS Crime Analyst, see note 4, *ante,* testified *inter alia* that in 1976, appellant was "a national sergeant at arms" with the Bandidos, but he declined to speculate about the functions of one in that position.[6] It was his understanding that appellant presently was no longer a Bandido member. A Harris County Organized Crime Control Unit crime analyst characterized a sergeant at arms as an "enforcer" and explained that a national officer of the Bandidos directs an enforcer "to do a job and they do it." A former El Paso Police Officer "came into contact" with appellant in November 1976, and since then as ATF special agent had talked with other law enforcement officers about appellant and his reputation. From

1. "The courts of appeals ... may enter any other appropriate order, as the law and the nature of the case may require."

2. "The courts of appeals ... may reverse the judgment in a criminal case, as well upon the law as upon the facts."

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. At the punishment hearing the first witness for the State identified himself as an administrative technician, a Crime Analyst, with "the Crime Analysis Service of the Texas Department of Safety," concerned in his work with several groups in Texas including the Bandidos. In several places the compilation reports that "CAS received information ..." or "CAS has received no information ..." The witness confirmed that appellant's Bandidos nickname is "Chi-lite;" in the DPS dossier among members known to be convicted felons is listed "37) CHARLES EDWARD TAMMINEN, aka 'CHI-LITE'...."

· None of this information was news to the trial judge, however. Appellant had testified in his own defense and was cross-examined closely about his prior conviction and past relationship with the Bandidos.

5. The prosecuting attorney professed an inability to recall just when in the life of the case he furnished the material to the court. We note that a jury selected March 9, 1981, returned its verdict March 14, 1981, and appellant was remanded to custody "pending receipt of pre-sentence report."

6. The aggravated rape of which appellant was convicted is alleged to have been committed December 9, 1976. Thus the references of the reputation witnesses to that year.

San Antonio, a detective serving as intelligence analyst and an FBI special agent also testified. All said appellant's reputation for being a peaceful and law abiding citizen is bad. Without objection a pen packet was admitted to support the repeater allegation; it revealed a 1962 conviction in Alabama for robbery, with punishment assessed at twelve years confinement.

For appellant a Bexar County Deputy Sheriff testified that when he retrieved appellant from a sheriff in Dothan, Alabama in November 1980, everyone he spoke to described him as "a model citizen," who was free to "go and come as he pleased," and as they traveled back to San Antonio appellant "wasn't one moments problem." Appellant related to the deputy that he had been a Bandidos sergeant at arms, but he had quit that, got married, was living with his wife and they had a baby boy about whom he talked. Appellant himself testified, attesting that he was no longer affiliated with or connected to the Bandidos.[7]

After both sides rested and closed the trial judge addressed appellant, first remarking that from the time the jury returned its verdict he had been "considering what will be the fair and proper punishment to give you in this case," and then continued:

"... and although I have heard the evidence here today that the State has produced, and although it is the opinion of those who testified that you have a bad reputation ... for being a peaceful and law abiding citizen, I want you to know that my decision as to your punishment is *not based upon what these men said, is not based upon the fact that you were once affiliated with the Bandidos, is not based upon the fact that you are a motorcycle rider or any of those facts that were brought out.*

\* \* \* \* \* \*

The punishment which I have arrived at for you is based *solely on what I heard from the testimony of* the two people who testified, *the two complaining witnesses.* And I have considered the complete range of punishment ... in that regard. \* \* \* [T]he jury found you guilty and that was their decision and it is my responsibility and my decision to punish you based upon that evidence. \* \* \* "

Whereupon the trial assessed punishment at confinement for a term of 99 years.[8]

---

7. Initially appellant had stated: "I'm not guilty of the charge, but the jury found me guilty. I don't ... feel bad towards anybody or I don't feel any inner animosities towards anybody. That's judicial procedure. And I feel that I got a fair trial and I also feel real bad the two girls got beat up the way they did. There was no doubt about that in my mind that somebody really beat them up really bad." He flatly denied ever killing anyone or being present when another was killed.

8. With leave, appellant's counsel made a short plea for the court to reconsider, and the judge responded:

"Well, believe me, I have mulled over this decision since and from the time that he was found guilty. I have studied the probation officer's report. I'm well aware of the fact that he's married and he has children, well aware of the fact that he has apparently presented no problem to no one in the last couple of years. But, as I said, based upon what I heard that happened in that motel room against my natural inclination to be merciful, I can't find any mercy, pure and simple, for what happened in that motel room. And what those two girls said he did. So, it was based upon, as I said, not ... what his name is or that he has a reputation from any source or that he's affiliated with any group. It's based solely upon the testimony of those two girls and what they have accused him of doing to them and were it any other person with the same situation ... I feel satisfied in my heart that that term would be the same, ninety-nine years. And that's the way I feel. You are at liberty to file a motion for reconsideration of punishment, as you well know, and the Court will give you a hearing thereon, if you wish. But I have no intentions, at the present time, of changing the punishment that I have found to be a fair and proper punishment in this case...."

Indeed, in due course appellant did file a motion to reduce sentence, and it was heard at the same setting at his amended motion for new trial. Both implicated the DPS dossier on Bandidos and its members and invoked due process rights in that regard. After hearing the trial court denied the motions.

We will not disturb the findings of the San Antonio Court of Appeals with respect to the conduct of the prosecuting attorney nor the assessment that it "represents an act of reprehensible prosecutorial misconduct," *Tamminen v. State,* supra, at 217. Nor are we disposed to reject its finding that *ex parte* acceptance of the DPS compilation by the trial judge is conduct that "cannot be tolerated" in the criminal justice system, *id.,* at 217–218. However, the remedy fashioned by the court in the circumstances has given this Court much concern.

As judges we are still "fully aware of [our] duty to protect the rights of the accused and of the binding effect of new concepts of due process announced by the Supreme Court of the United States," *Charles v. State,* 424 S.W.2d 909, 921 (Tex. Cr.App.1967), and like that highest tribunal we continue to determine whether a denial of due process has occurred from "an independent examination of the undisputed facts," *Ex parte Roberts,* 165 Tex.Cr.R. 353, 307 S.W.2d 94 (1957). From the record before us we cannot find a violation of due process that taints the assessment of punishment by the trial court, such that a new punishment hearing conducted by another judge is required.

Though at the time punishment was assessed in the case at bar, a trial court was not expressly authorized to order, receive and consider a presentence investigation report, it was common place to do so. See *Mason v. State,* 604 S.W.2d 83, 84–91 (Tex. Cr.App.1979, 1980) (Dissenting Opinion).[9] The trial court here ordered and received one, and we know that counsel for appellant familiarized themselves with it and that the trial court studied it, see note 8, *ante.* While we do not know its content, for the report is not in our record, since appellant made no outcry about it we must assume that whatever it reported was not particularly objectionable.

■ The Supreme Court of the United States has held that an accused is not denied due process of law when a trial court follows the "age-old practice of seeking information from out-of-court sources to guide [its] judgment toward a more enlightened and just sentence," *Williams v. New York,* 337 U.S. 241, 251–252, 69 S.Ct. 1079, 1085, 93 L.Ed. 1337 (1949). Then "the Court assumed that after a defendant was convicted of a capital offense, like any other offense, a trial judge had complete discretion to impose any sentence within the limits prescribed by the legislature [and] [a]s long as the judge stayed within those limits, his sentencing discretion was essentially unreviewable and the possibility of error was remote, if, indeed, it existed at all." *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977).[10] Certainly there was no denial of due process, much less an abuse of discretion on the part of the trial judge in considering the presentence report.

■ Article 37.07, V.A.C.C.P. contemplates a separate hearing on proper punishment and categorizes what evidence "*may be offered,*" *id.,* § 3(a), to inform the discretion of the assessor of punishment. But it is not mandatory that the State offer any such evidence, *Wright v. State,* 468 S.W.2d 422 (Tex.Cr.App.1971), and it has been held that without conducting a separate hearing a trial judge may assess a term of confinement more than the prescribed minimum. *Morales v. State,* 416 S.W.2d 436 (Tex.Cr. App.1967); *Wright v. State,* supra, at 424–425.

■ Here the trial court did hold a separate hearing on punishment and the State did offer reputation witnesses whose testimony implicated appellant's role in the Ban-

---

**9.** Effective September 1, 1981, that authority was provided by an amendment to Article 37.-07, § 3(d), V.A.C.C.P.

**10.** In capital cases, however, the Supreme Court has since made clear that an accused is "denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain," *Gardner v. Florida,* supra, 430 U.S. at 363, S.Ct. at 1207. We do not understand that the due process teaching of *Williams v. New York,* supra, has been otherwise modified by the Supreme Court.

didos. Yet, when it came to assessing punishment the trial judge expressly eschewed "any of those facts that were brought out," making the determination of the court "solely ... from the testimony of ... the two complaining witnesses"—testimony the court of appeals found "depicts a night of terror, brutality and sexual abuse," and the sufficiency of which appellant did not contest," *Tamminen*, supra, at 210. Since "normally there would be no requirement that the evidence heard at the guilt stage of the trial would have to be re-offered at the penalty stage of the trial before it could be considered on the issue of punishment," *Wright v. State*, supra, at 425, the allowable discretion of the trial judge in assessing a term of years was limited only by the maximum provided by law. *Wright*, supra.

■ All that remains to impeach what appears to be an otherwise fair exercise of discretion is the matter of the DPS dossier. The court below concedes, as it must: "The record is silent as to whether or not the judge read the document, or any part of it...," *Tamminen*, supra, at 218. But the record is vocal when it comes to devastating testimony the judge did hear concerning the Bandidos and appellant's past association with the group—from appellant himself during the guilt stage as well from reputation witnesses at the punishment phase. But, again, the judge specifically stated at least twice that he was not taking into consideration that live testimony. Thus, although the State now presses upon the Court the often utilized "presumption" that the judge disregarded the compilation of material about the Bandidos and appellant, we need not rely on such presumption. *Flowers v. State*, 482 S.W.2d 268, 269 (Tex. Cr.App.1972). To say that the dossier was given any consideration whatsoever in his punishment deliberations, we would first have to find that throughout the punishment hearing and the subsequent hearing on motion to reduce sentence the trial judge was dissembling—conducting an elaborate charade. There is not even a hint in this record to justify such a finding.

So much of the judgment of the San Antonio Court of Appeals that vacates the sentence and remands the cause to the trial court with instructions for further proceedings is reversed, and the judgment of conviction and sentence imposed by the trial court is affirmed.

ODOM, J., concurs in result.

MILLER and CAMPBELL, JJ., not participating.

ONION, Presiding Judge, concurring in part and dissenting in part.

Appellant was convicted of aggravated rape by a jury. His punishment, enhanced by allegation and proof of a prior robbery conviction, was assessed by the court at ninety-nine (99) years' confinement.

On appeal a panel of the San Antonio Court of Appeals affirmed the judgment, but vacated the sentence and remanded the cause to the trial court for the re-assessment of punishment by another district judge, the original trial judge being held disqualified. In assaying appellant's eighth ground of error, the appellate court found the prosecutor guilty of reprehensible prosecutorial misconduct, and concluded the judicial misconduct could not be tolerated. *Tamminen v. State*, 644 S.W.2d 209 (Tex. App.—San Antonio 1982).

Before turning to the eighth ground of error, the basis for the vacation of the sentence, a brief recitation of the facts is in order. The San Antonio court commenced its discussion of the facts: "The voluminous record depicts a night of terror, brutality, and sexual abuse. The evidence spins a web of facts and circumstances from which the jury was justified and virtually compelled to convict appellant of aggravated rape."

The prosecutrix P――― and another woman, C――――, both seventeen years of age, went to the Lamp Post Inn on the night of December 8, 1976. There they came in contact with appellant and his friends. C――― was threatened and P――― was yanked out of her chair and told to try to get some drugs. Later in the

parking lot, where P_____ and C_____ had gone with appellant and two men of whom they were fearful, a friend of P_____ gave her three or four baggies of marihuana. The three men, all members of the Bandido Motorcycle Club, took the girls in appellant's pickup truck to a motel where appellant had a room.

At the room the girls were forced to disrobe at gunpoint. One of the men left. Appellant and another man, "Shooter," then forced the girls to perform oral sex with them and they each had sexual intercourse with both of the girls. The girls were brutally beaten and pistol whipped. C_____ was sodomized in her rectum by use of a gun. The girls were told they would be killed if they screamed.

The girls were bleeding so badly at one point the appellant put them in the bathtub to clean up. The bleeding continued and the girls were returned to the bedroom. Appellant suggested they "waste" the girls, but "Shooter" recommended taking the girls somewhere else.

As a result of the noise, the police were called. While the police were trying to gain entrance, a naked C_____, with blood on her face, came out the door and fell in the hall. P_____ was on a bed unable to get up. Appellant and his companion had departed, apparently through an open window. Appellant was apprehended near the motel and a .45 caliber automatic pistol was found near where appellant was seen attempting to climb a fence during his flight.

At the penalty stage of the trial before the court, eighteen days after the jury's verdict, appellant entered a plea of "true" to the allegations concerning the prior felony conviction. Record evidence in support of the allegations also was offered, showing a 1962 Alabama robbery conviction with a punishment of twelve (12) years' imprisonment. A Department of Public Safety Crime Analyst testified in 1976 appellant

was "a national sergeant at arms with the Bandidos." Another crime analyst with Harris County testified a sergeant at arms in the Bandidos was an "enforcer." Three other law enforcement officers testified appellant's reputation for being a peaceful and law-abiding citizen was bad.

Appellant testified he was no longer affiliated with the Bandidos. He called a Bexar County deputy sheriff, who returned him from Alabama in 1980. The deputy testified appellant was described to him in Alabama as being a model citizen and appellant did not give him any problems on the return trip to San Antonio. Appellant told the deputy he had been a Bandidos sergeant at arms, but had quit, had gotten married and had a baby boy.

At the close of the penalty stage the trial judge assessed punishment at 99 years' imprisonment, which was within the range of punishment for the alleged crime.

Appellant's eighth ground of error, which caused the vacation of the punishment assessed, read:

"The Trial Court committed reversible error when, prior to sentencing, it received evidence and denied appellant and appellant's counsel access to this evidence, which had been secretly presented to the Court by the prosecution, such evidence being a document compiled by the Texas Department of Public Safety. The document itself is rank hearsay and highly prejudicial to the appellant. Such conduct denied the appellant his right to confrontation under Article I, Section 10 of the Constitution of the State of Texas and Vernon's Ann.C.C.P., Articles 1.05 and 1.25 and the appellant's right to a public trial under Article I, Section 10 of the Constitution of the State of Texas and Vernon's Ann.C.C.P., Article 1.05 and 1.24." [1]

---

1. The State complained that the ground of error was multifarious and not in compliance with Article 40.09, § 9, V.A.C.C.P., and that nothing was presented for review. *Williams v. State,* 605 S.W.2d 596 (Tex.Cr.App.1980); *Ma-*

*drid v. State,* 595 S.W.2d 106 (Tex.Cr.App. 1979), cert. den. 449 U.S. 848, 101 S.Ct. 134, 66 L.Ed.2d 58; *Ely v. State,* 582 S.W.2d 416 (Tex. Cr.App.1979).

At the hearing on the motion for new trial,[2] it was established by the testimony of one of appellant's lawyers that on the day before the penalty stage of the trial defense counsel were in the trial judge's chambers, apparently to see the pre-sentence report which had been ordered and to discuss the punishment to be assessed. While there, counsel observed on the judge's desk a booklet or document dealing with the Bandido Motorcycle Club.[3] One of the lawyers requested to see the booklet, but the trial judge declined to permit counsel to examine the document.

It was also shown that sometime after the trial commenced assistant district attorney Dick Ryman furnished the trial judge with a document compiled by the Department of Public Safety regarding the Bandido Motorcycle Organization. Ryman testified he furnished the document for general information purposes. He denied it was to influence the punishment assessed. He did not furnish a copy of the same to defense counsel because he had been informed it was classified information. Ryman had obtained the document from an investigator in his office.

The exact circumstances of how the document was delivered to the judge were not well developed.[4] At the close of the new trial hearing, the trial judge ordered the document marked appellant's Exhibit A, and made a part of the appellate record.

The Court of Appeals found that in receiving and accepting the document in question prior to imposing punishment the trial judge had denied the appellant the right to confrontation and cross-examination and denied appellant his right to a public trial "to the extent that the judge made use of it." The Court of Appeals pointedly censured the prosecutor for violating the spirit of Article 2.01, V.A.C.C.P., and the trial judge for violating State Bar of Texas, Rules and Code of Judicial Conduct, Canon No. 3A(4), and concluded the judicial conduct could not be tolerated.

The Court of Appeals found the trial judge received and accepted the document and made use of it despite

(1) the fact the document was not formally offered into evidence prior to the imposition of punishment;

(2) the fact there was no objection at the penalty stage to the court's possible consideration of the document, though appellant's counsel had observed the document in the judge's chambers the day before;

(3) the fact that the record is silent, as the Court of Appeals acknowledges, as to whether the judge read the document;

(4) the fact that the judge expressly stated at the penalty stage that he was basing the assessment of punishment upon the testimony of the prosecutrix and her companion on the night in question. This did not include the document.

In addition, if the evidence was received and accepted as found by the Court of Appeals, that court did not deal with the well established rule that the trial judge, as the trier of the facts, at the penalty stage of the trial, is presumed to have disregarded any evidence that was improperly admitted. *Kimithi v. State,* 546 S.W.2d 323, 327 (Tex.Cr.App.1977); *Maden v. State,* 542 S.W.2d 189 (Tex.Cr.App.1976); *Flowers v. State,* 482 S.W.2d 268, 269 (Tex.Cr.App. 1972); *Smith v. State,* 478 S.W.2d 518 (Tex. Cr.App.1972); *Garrett v. State,* 165 Tex. Cr.R. 328, 307 S.W.2d 270 (Tex.Cr.App. 1957). See also *Rhine v. State,* 642 S.W.2d 228 (Tex.App.—Houston [14th]—1982). Expressed another way—the trial judge is presumed to have relied only on properly admitted evidence when sitting as the trier of the facts. *Keen v. State,* 626 S.W.2d 309 (Tex.Cr.App.1981). This presumption also applies when the evidence in dispute arises

---

**2.** It appears the court heard the motion to reduce "sentence" or the punishment assessed at the same time.

**3.** One of appellant's attorneys, who had represented a number of Bandidos in criminal cases, testified the booklet did not look like anything he had seen before.

**4.** The trial judge was not called as a witness. See and cf. Article 38.13, V.A.C.C.P.

during the penalty stage of the trial. *Hernandez v. State,* 556 S.W.2d 337 (Tex.Cr. App.1977); *Kimithi v. State,* supra.

Further, in *Angelle v. State,* 571 S.W.2d 301, 303 (Tex.Cr.App.1978), it was made clear that the burden is on the defendant to show that he objected and that the trial judge "relied on or even considered" improper evidence in determining punishment. The appellant here did not sustain his burden.

As earlier noted, the appellant did not object at the penalty stage of the trial to any consideration of the document seen the day before in the judge's chambers by defense counsel. In his motion for new trial, appellant alleged in Paragraph VIII:

> "It is believed that prior to the punishment hearing, the court was furnished with ex parte materials, and discussions relative thereto, which are considered to be highly prejudicial to the Defendant, and which sole purpose would be to inflame the mind of the trial judge to such a degree that an impartial punishment hearing would be impossible."

At the hearing on the new trial motion, the appellant at no time objected or contended he was denied the right to confrontation or denied a public trial. He raises these contentions for the first time on appeal.

Where the objection made in the trial court by the defendant is not the same as that urged on appeal, he has not properly preserved the complaint for review. *Hodge v. State,* 631 S.W.2d 754 (Tex.Cr.App.1982); *Nelson v. State,* 607 S.W.2d 554 (Tex.Cr. App.1980); *Ex parte Scarbrough,* 604 S.W.2d 170 (Tex.Cr.App.1980); *Reger v. State,* 598 S.W.2d 868 (Tex.Cr.App.1980); *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr. App.1978); *McIlveen v. State,* 559 S.W.2d 815 (Tex.Cr.App.1977); *Bouchillon v. State,* 540 S.W.2d 319 (Tex.Cr.App.1976).

5. Under a list of known members of the Bandidos to be convicted felons is found appellant's name on page 14 as follows:
 "Charles Edward Tanninen, aka 'Chi-Lite', w/m, date 3–23–44, DPS # 2,005,983, Texas DL # 0832 8743."

The complaints appellant presented in his ground of error were not preserved for review.

It is also observed that after examining the sealed document (appellant's Exhibit A) the Court of Appeals wrote:

> "The document, which appears to be a compilation of information about the Bandido Motorcycle Club, gives names and other information regarding some of the officers of the club. It purports to record names of members in prison, under indictment, those convicted of felonies, and some of those being sought by law enforcement officers. Appellant's name is in Exhibit A. The document has both specific and general information; and it can be characterized as a document most unfavorable to the Bandidos ...."

An examination of the document shows that appellant's name appears on only one page.[5]

It is undisputed from the evidence properly before the trial court that the appellant was a member of the Bandido Motorcycle Club, was a national officer, that a Bandido sergeant at arms like appellant was an enforcer, etc. Appellant admitted in his testimony he had been a member of the Bandidos.

In *Chambers v. State,* 568 S.W.2d 313, 326 (Tex.Cr.App.1978), this court wrote:

> "The improper admission of evidence does not constitute reversible error if the same facts were shown by facts to which no objection was addressed. *Watson v. State,* 532 S.W.2d 619 (Tex.Cr.App.1976); *Hayles v. State,* 507 S.W.2d 213 (Tex.Cr. App.1974)." See also *Brasfield v. State,* 600 S.W.2d 288 (Tex.Cr.App.1980); *Howard v. State,* 599 S.W.2d 597 (Tex.Cr.App. 1979); *Boles v. State,* 598 S.W.2d 274, 279 (Tex.Cr.App.1980); *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr.App.1978); *Wood v. State,* 511 S.W.2d 37 (Tex.Cr.App.1974).

The fact that appellant had a prior felony conviction, was known as Chi Lite, his age, etc., were in evidence from other sources.

It is noted that the pre-sentence report is not in the record, so we are unable to determine how much of the same information contained in the document was reflected in said report as well. The pre-sentence report was before the court without objection,[6] and it had apparently been seen by appellant's counsel.

Further, the reputation of the Bandido Motorcycle Club is common knowledge to most law enforcement personnel and the trial judges trying criminal cases. One needs only to read the opinions of this court over the last few years to be aware of that reputation.[7]

Surely it cannot be said that a trial judge must put aside his common knowledge in deciding on the punishment to be assessed a criminal defendant.

The facts do not show that the trial judge accepted the document into evidence or that he considered or otherwise utilized the document. The record does not show he even read the document. If it was before the court, it is presumed that the court disregarded any inadmissible evidence, and the appellant did not sustain his burden to show the court considered or relied upon improper evidence. There was no objection to the document at the penalty stage of the trial, and the complaint in the motion for new trial does not comport with the complaint on appeal. Thus no review is preserved. Further, an examination of the document shows that some of the information contained therein was shown by other facts properly in evidence. Still further, the reputation of the Bandidos is common knowledge. If it can be said to be any error at all, the error is harmless error, or at least not reversible error. The appellant was not denied the right to confrontation and cross-examination or denied a public trial to any extent as found by the Court of Appeals.

The majority of this court now states it "cannot find a violation of due process that taints the assessment of punishment by the trial court, such that a new punishment hearing conducted by another judge is required.[8] I fully agree, but the Court of Appeals did not base its decision on a violation of due process. The majority, however, does not discuss the basis of the appellate opinion below in vacating the sentence.

The majority also expressly declines to disturb the findings of the Court of Appeals with respect to the conduct of the prosecut-

6. It has been said that the primary purpose of a presentence report is to provide the court with information upon which to base a rational decision on the motion for probation. *Rodriguez v. State,* 502 S.W.2d 13 (Tex.Cr.App.1973). See also *Bean v. State,* 563 S.W.2d 819, 821 (Tex. Cr.App.1978) (concurring opinion); *Nunez v. State,* 565 S.W.2d 536, 539 (Tex.Cr.App.1978) (concurring opinion). Nevertheless, it became quite common for the court to order a pre-sentence report even where the issue of probation was not involved and the same was utilized without objection. See *Mason v. State,* 604 S.W.2d 83 (Tex.Cr.App.1979). The practice has now been legitimatized by Acts 1981, 67th Leg., p. 2466, ch. 639, effective September 1, 1981. See now Article 37.07, § 3(d), V.A.C. C.P.

It should be remembered that these reports often contain reports of arrests not resulting in final convictions. *McNeese v. State,* 468 S.W.2d 800 (Tex.Cr.App.1971); *Valdez v. State,* 491 S.W.2d 415 (Tex.Cr.App.1973), reports of pending indictments, *Clay v. State,* 518 S.W.2d 550 (Tex.Cr.App.1975), and hearsay statements, *Brown v. State,* 478 S.W.2d 550 (Tex.Cr.App.1972). It would appear that these matters may now be properly considered by the court using the pre-sentence report to determine punishment as well as the issue of probation.

In *Lee v. State,* 505 S.W.2d 816 (Tex.Cr.App. 1974), it was held the trial court is not required to disregard a hearsay statement in a pre-sentence report and the use of such statement does not violate the defendant's right to confrontation and cross-examination.

7. The Court of Appeals characterized the document in question as being unfavorable to the Bandidos. If there has ever been a favorable report, this writer is certainly unaware of any such report that has surfaced.

8. The trial judge was not disqualified even if a remand for reassessment of punishment was necessary. Frequently where a trial judge has improperly admitted and considered a void prior conviction in assessing punishment the cause is remanded for reassessment of punishment without regard to the void conviction. The same judge is not disqualified from performing this task. See *Bullard v. State,* 548 S.W.2d 13, 18 (Tex.Cr.App.1977), and cases there cited.

ing attorney and further states: "Nor are we disposed to reject its findings that ex parte acceptance of the D.P.S. compilation by the trial judge is conduct that 'cannot be tolerated' in the criminal justice system. . . ."

While the action of the prosecutor in furnishing the document is not to be commended, I find difficulty, in light of the facts, in condemning the trial judge without more. The facts of the "furnishing" are not clearly developed. Though the document was seen in the judge's chambers by defense counsel, the record is silent as to whether he read the same, and he expressly stated the evidence upon which the assessed punishment was based.[9] It did not include the document. Neither the Court of Appeals nor the majority today clarifies what it meant by "acceptance" nor points to facts constituting the same. While every trial judge must exercise extreme caution to prevent attorneys for either party or others to ex parte show him evidence, documents, etc., relating to a case pending before him, I find no violation of State Bar of Texas, Rules and Code of Judicial Conduct, Canon No. 3A(4),[10] under the record before this court. Those of us in the armchairs of the ivory towers of appellate courts should not shoot from the hip. Only when standing, after careful consideration of an adequate record, and with adequate cause, should we fire bullets of condemnation at those at the front of our criminal justice system. I dissent to the majority's refusal to reject the finding of judicial misconduct by the Court of Appeals.

I concur in the result reached by the majority reversing that part of the judgment of the Court of Appeals vacating the sentence and remanding the cause for reassessment of punishment before a different judge. I also agree the judgment of the

trial court shall be in all things affirmed. I dissent to parts of the majority's opinion, for the reasons above enumerated.

W.C. DAVIS, J., joins in this opinion.

TEAGUE, Judge, dissenting.

I would summarily refuse both Petitions for Discretionary Review. This case is a classic example of why business related to a case should be conducted in the place the law has designated for it to be conducted—in the courtroom where the case is assigned.

I dissent to the majority opinion reversing the decision of the Court of Appeals to remand the case for a new punishment hearing to be held before a different trial judge. In reaching its result, I believe the majority totally overlooks the valid reasons the Court of Appeals gave in its opinion for its decision to remand the case.

The center of all the attention is a document; a booklet containing information about the Bandido Motorcycle Club, and its past and present members. The booklet contains a reference to appellant. It is undisputed that the booklet was delivered by a prosecuting attorney to and accepted by the trial judge in this cause—with the act of giving and the act of receiving carried out in ex parte fashion. The booklet was given at some point in time after the trial commenced and before the punishment was assessed. There is also no dispute over the fact that the trial judge guarded the booklet per the instructions he was given by the prosecuting attorney—not to permit or allow anyone, other than himself, to read what was contained in the booklet. Unfortunately, the record does not reflect why the trial judge was given the booklet by the prosecuting attorney, or why he did not admonish the prosecuting attorney for offering the booklet to him in the first

---

**9.** While at the penalty stage the trial judge stated he was basing the punishment upon the testimony of the prosecutrix and her companion, he later stated into the record that he was also considering the prior Alabama robbery conviction alleged for enhancement of punishment to which the appellant entered a plea of "true."

**10.** Said Canon reads:

"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and except as authorized by law, neither initiate nor consider ex parte or other private communications concerning a pending or impending proceeding."

place. Apparently, the trial judge was never questioned about what, if any, express use he made of the booklet, or even whether he read any part of the booklet. There is no dispute, however, that the hearsay information contained in the booklet is most unfavorable to the Bandido Motorcycle Club, and its past and present members, including appellant. Subjectively, the booklet indicts appellant for being a past member of that organization. It would defy human experience to state that after receiving the booklet the trial judge merely placed and left it on his desk.

The Court of Appeals in its opinion did not use any one particular reason for holding that this cause should be remanded for a new punishment hearing before a different trial judge, but, instead, gave several reasons for its ultimate decision to remand this cause for a new punishment hearing before a different trial judge: (1) the booklet and the information contained therein are rank hearsay to the appellant and his counsel; (2) by receiving the booklet ex parte the trial judge denied appellant his right to a public trial; (3) contrary to many rules of law, ex parte hearings were held by the trial judge with both sides. Because of all of the above, the punishment hearing may have been tainted, thus mandating a new punishment hearing.

The majority, in reaching its conclusion that the Court of Appeals erred in its decision to remand the cause for a new punishment hearing before a different trial judge, appears, among other things, to compare the booklet to a pre-sentence investigation report. However, the booklet's contents do not even resemble what might be included in the worst imagined presentence investigation report. It is a compilation of what appears to be nothing but hearsay information, which relates to appellant's former peers, associates, and the organization to which he had previously belonged. Joseph McCarthy would have been proud to have witnessed such a document, and he and his associates probably would have placed much stock in it, had appellant personally appeared before the hearings conducted at a time not so distant in this country's past.

For emphasis, the Court of Appeals expressly stated the following in its opinion: ". . . it is essential not only that justice be done, but also that justice appear to be done. Our criminal justice system is already burdened with too high a degree of public skepticism about its fairness. To avoid further erosions of confidence that our courts do, indeed, treat all litigants with equal fairness, judges and prosecutors alike must keep themselves, like Caesar's wife, above suspicion in which their fairness and integrity could appear to be compromised." I totally subscribe to those beliefs, and I further believe that those beliefs caused the members of the Court of Appeals to ultimately make the unanimous decision they did.

A principle long established in our law is that unless such is relevant to the case, in assessing punishment, trial courts do not punish convicted persons because of who their associates might be, or because a defendant might be a member of a certain organization, which organization has principles and morals which are alien to the average citizen's principles and morals. Today, however, by reversing the decision of the Court of Appeals, this Court denigrates that principle.

Unquestionably, the majority opinion reflects that its author searched long and hard to find objective facts that would have sustained the decision of the Court of Appeals. However, I find that the majority, instead, should have been searching for subjective and latent collateral factors that caused the Court of Appeals to enter the order it did because that is what its decision is founded upon.

The bottom line of the decision of the Court of Appeals is that because of subjective and latent collateral factors in this cause there may be the appearance that justice was not properly and correctly done in this cause; not that it was not done. To remove any question about the matter, the Court of Appeals correctly, in the interest of justice, ordered a new punishment hearing to be held before a different trial judge.

This record figuratively screams out that its decision is correct. To the majority's holding that the Court of Appeals erred, I dissent. The majority errs by not affirming the Court of Appeals on this point.