David Lee MALONE

v.

The STATE of Texas.

No. 09–90–033 CR.

Court of Appeals of Texas, Beaumont.

Feb. 17, 1993.

the Court having considered same finds that this Writ of Habeas Corpus should be (Denied)."

Thomas A. Chambers, Liberty, for appellant.

Michael R. Little, Dist. Atty., Jerry E. Andress, First Asst. Dist. Atty., Liberty, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

On January 25, 1990, in the 75th District Court of Liberty County the appellant was convicted by a jury of the felony offense of possession of methamphetamine of less than 28 grams. The punishment was assessed by the jury at four years imprisonment and a fine of $500.

The appellant's only point of error contends that the trial court erred by overruling appellant's oral motion in limine and abused its discretion by admitting testimony before the jury of an alleged extraneous offense committed by appellant. The appellant avers that the probative value of the admission of the handgun evidence was outweighed by the danger of unfair prejudice. The nature of the record and the contentions in the briefs require discussion.

We disagree with the appellant and affirm the judgment of the trial court.

Some pertinent, procedural facts of the case are that prior to the commencement of the evidentiary stage of the trial and outside the presence of the jury, trial counsel for the appellant made an oral motion in limine pertaining to certain evidence *which he anticipated would be offered by the State*. The anticipated evidence pertained to two alleged or so-called extraneous offenses which may have been committed *during the commission of the offense for which the appellant was on trial*. After a

lengthy discussion, the appellant's motion in limine was overruled. Counsel for the appellant then requested the trial court's permission to make objections at the proper time to the presentation of these matters during trial. This request was granted by the trial court. This occurred outside the presence of the jury.

On December 19, 1988, between approximately 1:15 and 1:45 a.m., Officer Jim Bates, a Deputy Sheriff with the Liberty County Sheriff's Department, was on patrol on Doc Howard Road. As Officer Bates exited Doc Howard Road, he saw a vehicle approaching his position travelling in the opposite direction. He noticed the vehicle had two men in it. This vehicle was travelling on an oil lease, private road. This property had numerous "No Trespassing" signs posted. Due to the hour of the night and the nature of the private property, Deputy Bates became suspicious and stopped the vehicle.

After stopping the vehicle, Deputy Bates identified the occupants of the vehicle as being the appellant and his companion, Bryant Markham. While engaged in conversation with the appellant, Deputy Bates noticed that a trailer was attached to the appellant's vehicle. Further examination of the trailer by the officer revealed oil field equipment, to-wit: tubing and sucker rods. He asked the appellant and his companion if this equipment belonged to them. *No response was given. Later and after further investigation, the deputy arrested the appellant and his companion and charged them with the offense of theft.*

The lease owner's representative, Mr. Johnny Watson, arrived at the scene. Mr. Watson told the deputy that he wanted to file charges against the appellant and his companion because they did not have permission to be on the private property or to take any of the privately-owned oil field equipment off the property.

### The Extensive, Unobjected-to Evidence of the Theft

It is interesting and important to note that the evidence concerning the theft case was developed in detail. This evidence was firstly developed from Deputy Sheriff Bates who testified concerning the theft. He described the trailer upon which the tubing and the sucker rods were being transported. He identified a number of State's exhibits which were pictures which portrayed the oil field equipment. His testimony concerning the theft is set out in a number of pages in the statement of facts. There was no objection made either to the verbal testimony or to the State's exhibits, being photographs. In fact, as to the State's photographic exhibits, the appellant announced affirmatively no objection. By verbal testimony and by exhibits it was shown that the car that was pulling the trailer was owned and operated by the appellant. Furthermore, testimony was developed to the effect that the road and the land on which the appellant was operating his vehicle with the attached trailer was on a private oil lease and also on a private hunting lease which contained posted signs. This testimony was not objected to. These private leases had "No Trespassing" signs posted. At several different places in the deputy's testimony, the oil field equipment was referred to again without objection.

It should be noted that no point of error in his brief is made by the appellant that trial counsel was ineffective. Deputy Bates further testified that when he stopped the defendant and his companion, he asked them if they had permission to be in the area and if they had permission to take the pipe from the area. No answer was given. The officer testified that the defendant and his companion hung their heads. The officer then testified he placed both of the men under arrest for the suspicion of theft. No objection was made to the testimony concerning the stop and arrest for suspicion of theft. Deputy Bates further testified that he and the defendant Malone went from the place of the stop, back up on the oil lease and appellant pointed out the place where the stolen pipe had come from. Apparently they had taken what was referred to as reserve pipe. The evidence of this investigatory trip was not objected to. The deputy asked Malone where the pipe had come from and the appellant said "back there at the back".

The appellant then said, "I'll show you where it was."

Prior to transporting the appellant and his companion to the Liberty County Jail, a search of the passenger compartment of the appellant's vehicle was done. This search was characterized as an inventory search. The search revealed a film canister with a plastic baggie containing a white powdery substance inside the baggie and a snub-nosed .22 caliber pistol.[1] The canister was in the middle of the front seat. The canister was in plain view.

### Evidence of the Methamphetamine

Furthermore, the record on the evidence concerning possession of the methamphetamine in this case when considered with the verbal testimony and the exhibits of the case is compelling and overwhelming. It is very interesting and important to note that a deputy sheriff, Ms. Lee Ann Wheat testified. She was a certified police officer and a deputy sheriff and she worked in the I.D. division and she also was assigned to take care of and handle all the evidence that was turned in or gathered at the scene of offenses. She described how the evidence is cared for and secured in the Sheriff's Department. Her testimony bore upon the chain of custody. Interestingly, when the State passed Deputy Wheat, trial counsel announced "No questions, your Honor."

### Betty Donatto's Testimony

Betty Donatto was called to the stand. She was employed in the Narcotics Department of the Sheriff's Department in Liberty County. She transported the contraband to the DPS lab in Houston. When the State passed this witness, again the trial counsel announced "No questions, your Honor."

### Douglas Quinn, Jr.'s Testimony

The State called a witness named Quinn to the stand. He had sold or traded the Buick car involved to Malone. He had been the previous owner of Malone's vehi-

cle. He identified it as a Buick and even identified the license plate number. He had been convicted of felonies and admitted the convictions. The witness Quinn had learned that David Lee Malone had been arrested in connection with some controlled substances. Quinn testified about a conversation that he had with Malone in connection with Malone's arrest on a narcotics charge. The conversation took place at Malone's house. It took place after Malone had gotten out of jail. The conversation took place the day before Christmas of 1988. Quinn testified:

Q Would you tell the jury the nature of that conversation.

A Well, he was telling me that he had got busted for meth in the oil fields. I asked him why he didn't try to throw it out the window because he got busted for it. He told me that he didn't have time, that the law come up on him too fast.

Q Okay. So, he told you that he would have thrown the meth out the window but the law came up too fast?

A Yes.

Q Did he say anything to you, sir, about why they were out there in the oil field?

A They was out there trying to get some pipes.

This evidence came in without objection. Upon cross-examination of Quinn the trial counsel asked:

Q As I recall the statement that you claim that he made to you the day before Christmas was, you asked him why he didn't throw it out and he said because the law came up on him too fast?

A Yes.

Q That's the exact quote, as you recall it; is that correct?

A That's—yes.

Q That conversation took place between you and David and nobody else was present?

---

1. Trial counsel for the appellant made a general objection to the handgun based on relevance

when it was offered into evidence.

A  No.  There wasn't anybody else present.

Q  This was at his home?

A  Yes.

Quinn's evidence is revealing.  It shows Malone had control of the methamphetamine and knowingly possessed it.  *Malone would have thrown it away but had no time to do so.*

### Haby's Testimony

The State called Lou Haby.  He was a toxicologist and a chemist for the Department of Public Safety.  He worked at the Crime Lab in Houston.  The trial counsel stipulated that he was an expert in the area of chemical analysis of suspected substances.  The toxicologist Haby gave crucial and meaningful testimony concerning the fact that the substance was methamphetamine.  No appeal is taken from his testimony.  No point of error is leveled against his testimony.

### Dunn's Testimony

One Robert Arthur Dunn was called to the stand.  He was a police officer employed by the Liberty County Sheriff's Department.  He had been involved in numerous narcotics investigations in Liberty County.  He had worked undercover in narcotics for about three years.  He testified that methamphetamine was a common contraband that was purchased on the streets in Liberty County and that it was abundant in Liberty County.  He testified it was commonly called "crack", "meth", "speed", and "crystal".  He testified about the manufacture of methamphetamine, going into some detail as to the chemicals used and how these chemicals are processed.  He testified about a clandestine lab that was used to manufacture methamphetamine in Liberty County.  He testified in some detail about how "meth" was packaged and how it was placed in a larger container.  He also gave testimony concerning the going price of a "hit".  No point of error challenges Dunn's testimony.

**2.** State's exhibits 1, 2, 3, 4, and 5 were photographs of the trailer, the actual hitch, the actual

### The Pistol's Inherent, Intermixed, Same Transaction Characteristics

■  The pistol was recovered from under the front seat of the passenger's side of the vehicle.  Under the circumstances, the officer could properly search the passenger compartment and the areas within the reach of the driver and the passenger in order to protect himself and to preserve evidence.  The officer acted lawfully when he took possession of the snub-nosed .22 pistol which was loaded.  We conclude that the introduction of the pistol was relevant under TEX.R.CRIM.EVID. 401.

The pistol was offered and admitted into evidence over the Appellant's objection.  This evidence, we think, was *res gestae* of the offense.  This was same transaction contextual evidence.  The same was not past, background evidence.  Crimes do not occur in a vacuum.  The jury was entitled to know the surrounding circumstance of the *offense and the arrest.*  The officer had a right to protect himself from gunshot wounds.

### The Oral Motion in Limine

■  The appellant argues, first of all, that the trial court erred in overruling his oral motion in limine.  However, this portion of appellant's point of error requires little discussion.  It is well established law in Texas that a motion in limine alone will not preserve error.  *See De La Garza v. State,* 650 S.W.2d 870 (Tex.App.—San Antonio 1983, pet. ref'd) which cites *Basham v. State,* 608 S.W.2d 677 (Tex.Crim.App. 1980).

In order for the appellant to preserve error, he must object to the evidence when offered on a valid basis.  Appellant failed.  Throughout the course of trial, the appellant's counsel did not make objection to the State's offer of evidence concerning the theft of the tubing and the sucker rods.  We find no objection to the theft of the tubing and sucker rods.  Thus, with regard to the theft, nothing is preserved for review.[2]

oil tubing and sucker rods.  No objection was made by the appellant upon their being intro-

Upon the entirety of the record and upon the careful examination of the numerous exhibits including State's Exhibit 9–A, we determine beyond reasonable doubt that the gun testimony made no contributions to the verdict of guilty or the sentence in the case. The jury had before it the serious theft offense and the trespass. It is very interesting that State's Exhibit 9–A was placed into evidence without objection. In fact, trial counsel stated affirmatively no objection. Exhibit 9–A consists of seven pages of laboratory reports and analyses of the contraband. Exhibit 9–A is condemning. The chain of custody evidence remains remarkably convincing.

When the State rested, *the defense at trial immediately rested* and when the State closed, *the defense immediately closed on guilt or innocence.* Again, the gun evidence beyond reasonable doubt made no contribution to the verdict of guilt.

### State's Argument at Guilty Stage

█ Significantly, in the final argument on the guilt-innocence stage, the State stressed the testimony given by Quinn. No objection was leveled. The State summed up the testimony given by Deputy Sheriff Bates. The State argued the theft evidence and the fact that Johnny Watson represented the lease owner and wanted Malone and his companion arrested for theft. No objection. Then the State argued the finding of the canister and the contents of the canister. Part of the argument was that "they were out there stealing, folks, that's what they were doing". There was no objection to this argument. Then the State made a final argument in summary concerning the inventory of the vehicle and the fact that the canister and the three triangles contained in the canister were found during the inventory of the vehicle. The totality of the argument concerning the .22 snub-nosed gun was this:

> [PROSECUTOR] ... During the course of his inventory, what's [sic] he find? A pistol. A pistol, folks. You can't carry pistols. Users of meth carry pistols.

Again no objection from appellant. The prosecution was summing up the evidence and drawing logical and reasonable deductions from the evidence. The argument was brief. Hence, a waiver took place. Nothing is presented for review.

A great part of the concluding argument of the prosecution at the guilt stage was the testimony of Quinn. Reviewing the fact that when Quinn inquired: "Why didn't you get rid of the drugs?", why did Malone say: " 'The cops—I didn't have time, man. The cops were on me too fast,' or words to that effect"—the State argued forcefully that that testimony alone was sufficient to convict. The prosecution also argued:

> When Bubba or Doug Quinn said, "Why didn't you get rid of the dope," why didn't the Defendant say, "I didn't know the dope was in the car"? He didn't say that. See, he knew it was there. He said he didn't have time to get rid of rid of [sic] it because the cops fell on him too quick. Now, he said in effect he knew the dope was there, knowledge, but I didn't have time to get rid of it. That's what he said.

### The .22 Snub-nosed Pistol vis-à-vis Abuse of Discretion

█ The appellant complains that the trial court abused its discretion in allowing the handgun testimony to be presented into evidence before the jury. Judicial precedent has held that the State is entitled to prove the circumstances surrounding a stop or an arrest. It is well established that it is within the sound discretion of the trial court to determine whether *any evidence is relevant or not.* This Court will not reverse a decision of the trial court unless abuse of discretion is clearly shown. The prosecution is entitled to show the facts and circumstances surrounding an indicted offense and the arrest. *Greenwood v. State,* 740 S.W.2d 857 (Tex.App.—Dallas 1987, no pet.). No abuse of discretion is shown. *See Hernandez v. State,* 484 S.W.2d 754 (Tex.Crim.App.1972); *Lanham*

---

duced and admitted into evidence. The theft was an extraneous offense. No complaint is made on the basis of ineffective trial counsel. No such point of error is presented.

*v. State,* 474 S.W.2d 197 (Tex.Crim.App. 1971).

▪ Evidence of other crimes committed by the accused may be admitted when such evidence is shown to be both material and relevant. Evidence of extraneous offense is admissible pursuant to the *res gestae* theory under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to, during and subsequent to the commission of the offense so that they may realistically evaluate the evidence. *See Albrecht v. State,* 486 S.W.2d 97 (Tex.Crim. App.1972). Where another offense is blended or closely interwoven with the case on trial, proof of such is proper. *See Archer v. State,* 607 S.W.2d 539 (Tex.Crim.App. 1980). Such is this case.

### The Montgomery Inquiries and Tests

▪ The trial court found the introduction of the handgun to be relevant evidence, contrary to the argument of the appellant's trial counsel. The trial court found the gun to be relevant based upon reason. *Gobin v. State,* 690 S.W.2d 702 (Tex.App.—Fort Worth 1985, pet. ref'd). The next step or inquiry that this Court must make is to determine whether or not the probativeness of this evidence is substantially outweighed by the danger of unfair prejudice. We have been guided by *Montgomery v. State,* 810 S.W.2d 372, 386 (Tex.Crim.App.1990) (Opinion on Rehearing on Court's Own Motion). No unfair prejudice existed. Certainly no unfair prejudice occurred in light of the fact that the evidence of the theft was before the jury. We perceive the theft was more culpable and more damaging to the defense than the handgun. We determine that, additionally, the handgun made no contribution to the conviction or the punishment. The possession of a small pistol while travelling at night in Texas on dark roads is not damaging—certainly not when compared to the theft of valuable oil field equipment.

Applying the *Montgomery* second test, we find that the probative value of introduction of the handgun substantially outweighs the danger of any unfair prejudice.

We conclude that the weapon had probative value because it showed that the appellant was prepared to use the gun if necessary to protect himself in his commission of the theft offense which was not objected to. Not only do we see that the gun may have been used to protect the appellant in his thievery, *but also to protect his drugs as well.* We find support in *Maddox v. State,* 682 S.W.2d 563 (Tex.Crim.App.1985).

Furthermore, we find *Gobin v. State, supra,* is another case on point. *Gobin* allowed the admission of a .38 caliber pistol which was found beneath the seat of the automobile which the defendant was driving at the time of his arrest. This is very similar to the instant case. The court held that such weapon was admissible because it had probative value, and that it showed the appellant was prepared to protect his drugs if necessary. We quote from *Gobin, supra:*

> The weapon had probative value because it showed that appellant was prepared to use the gun if necessary to protect his drugs and to effect the sale and delivery of the substance. *See Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App.1972); *see also Solis v. State,* 647 S.W.2d 95, 100 (Tex.App.—San Antonio 1983, no pet.); *Tamminen v. State,* 644 S.W.2d 209, 213 (Tex.App.—San Antonio 1982), *aff'd,* 653 S.W.2d 799 (Tex.Crim.App. 1983).

We determine in the case at bar that the handgun was definitely shown to be directly connected with and contemporaneous to and inseparable from the stop and arrest of the appellant and the search. We find no abuse of the trial court's discretion in finding such evidence to be relevant and highly probative. Logically, the evidence of the gun would be admissible under TEX.R.CRIM. EVID. 404 tending to prove motive, intent or knowledge. It tends to negate mistake or accident. The gun had probative value because it showed appellant was prepared to protect his methamphetamine.

### The Opinion in Montgomery v. State on Court's Own Motion for Rehearing Revisited

▪ The evidence concerning the gun was not under this record an attempt to

prove the character of the appellant in order to show that he acted in conformity therewith. The prosecution argued: "During the course of his inventory, what's [sic] he find? A pistol. A pistol, folks. You can't carry pistols. Users of meth carry pistols." The evidence of the pistol logically was to prove the element of possession and use by the appellant—users of "meth" carry pistols. It had to do with present *res gestae* matters. It was not evidence that was introduced to establish a propensity to act in a certain way. It was not character evidence. This evidence had nothing to do with past events.

TEX.R.CRIM.EVID. 404(a) provides in logical substance that evidence of a person's character or trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion based upon other or prior facts or circumstances. The evidence of the gun was present up to the minute, *res gestae,* highly relevant to the issues set out in the indictment, being possession of methamphetamine and intentionally and knowingly possessing such contraband. For all this record shows, this was the first time that the appellant was ever in possession of methamphetamines. Character evidence has to do with a person's character or traits of character that have been established over some reasonable period of time. The gun evidence had relevance apart from any so-called propensity or tendency of appellant. It was used to prove an elemental fact of the offense. Justice Clinton wrote in *Montgomery, supra,* at 387 that:

> Rule 404(b), supra. Extraneous offense evidence that logically serves any of these purposes is "relevant" *beyond* its tendency "to prove the character of a person to show that he acted in conformity therewith." It is therefore admissible, subject only to the trial court's discretion nevertheless to exclude it "if its probative value is substantially outweighed by the danger of unfair prejudice.... Rule 403, supra. (emphasis theirs)

The gun testimony certainly has relevancy apart from character conformity. Since the gun evidence tends to establish an elemental fact and some evidentiary facts, the trial court properly performed the necessary balancing test.

Once the evidence has been ruled relevant (outside the jury's hearing), an objection that the proffered evidence amounts to proof of an "extraneous offense" will no longer suffice to automatically invoke a ruling from the district court as to whether the evidence is nevertheless subject to a second exclusionary rule on the ground of unfair prejudice. A further objection is necessary based upon Rule 403. The second objection is now required. Justice Clinton wrote in *Montgomery, supra,* at 388:

> Further objection based upon Rule 403 is now required. Second, when the trial court *is* called upon by sufficient objection to balance probativeness and prejudice, the presumption is now that probativeness is the weightier consideration.... (emphasis theirs)

Appellant did not adhere to these steps. Appellant failed to preserve error under *Montgomery, supra.*

The correct approach now under Rule 403 is to admit relevant evidence unless the probative value of that relevant evidence is substantially outweighed by the danger of unfair prejudice. *Crank v. State,* 761 S.W.2d 328 (Tex.Crim.App.1988). A presumption exists that the relevant evidence will be more probative than prejudicial. *Montgomery, supra,* at 389. The ultimate ruling is one for the trial court. It is its duty. Rule 403; *Id.* at 389. Neither the proponent or the opponent of the evidence has the burden concerning the substantially outweighing of probative value test. In fact, one landmark case decrees that the test simply means that the trial court should favor admission in close cases. No abuse of discretion is shown. *Id.* at 390.

### The Opinion in Mayes v. State

The dissent has forcefully cited and placed major reliance on *Mayes v. State,* 816 S.W.2d 79 (Tex.Crim.App.1991). Mayes had objected to any evidence that he was in an administrative segregation unit because the same was prejudicial to him.

Administrative segregation was for prisoners who could not be handled in other places, in a word, troublemakers. Mayes contended that the administrative segregation evidence could only have the effect of prejudicing him and would deny him the right to a fair trial.

In brief, the argument was that the segregation evidence unfairly prejudiced Mayes showing that this is where they put the bad guys, the ones who misbehave. This type of evidence, we perceive, is much different from the gun evidence in this appeal. The segregation evidence definitely had strong connotations and probative force that Mayes was a troublemaker, a bad guy, and one who misbehaved. Hence, in *Mayes*, this evidence certainly possessed a character component. The administrative segregation had been based upon prior acts and conduct of Mayes. This reality is important and determinative.

*Mayes* is simply very different and distinguishable from this case. In fact, in *Mayes*, one witness told the jury that administrative segregation is where you house the inmates that are a threat to the general population of the prison, a threat to the staff, a threat to the other inmates and just generally cannot get along. The holding in *Mayes* was that extraneous offense evidence was harmless because similar evidence came in without objection. The extensive, repetitious proof of the theft, under this record, renders the objected-to evidence harmless beyond a reasonable doubt. The pistol was not objected to in connection with the theft offense.

### The Punishment Phase

After returning a unanimous verdict of guilty, the State put on the punishment evidence. It first called two peace officers. Each testified that they knew the reputation of Malone in the community in which he lives for being a peaceful and law-abiding citizen. They knew his reputation on those matters. They stated his reputation was bad. A former police officer was called. He was presently the co-owner of a towing service in Cleveland. He testified

that the appellant's reputation for being a peaceful and law-abiding citizen was bad.

There were no cross-examination questions for the first two witnesses. The cross-examination of the third witness merely established that he had backed up Deputy Bates at the scene. D.K.P. was called to the stand. She stated she was married to David Lee Malone. She testified that he had not been convicted of a felony according to her personal knowledge. There was no evidence concerning the pistol introduced at the punishment stage. A brief statement was made in the State's closing argument about the carrying of a pistol. No objection was made. Hence, the court did not have a chance to rule on any objection, no opportunity was afforded the court, therefore, to instruct the jury if it so ruled to disregard that argument. Waiver resulted. Defense counsel made no objection at all to the State's closing argument at the punishment stage. The defense asked that the jury be polled. It was polled. The verdict was unanimous.

We conclude no error occurred in the punishment proceedings. If the gun testimony is considered objectionable under the *res gestae* doctrine we determine beyond a reasonable doubt that the same made no contribution to the conviction or to the punishment.

We observe that under the latest *Montgomery* doctrine a balancing test must be performed. This test deals with extraneous offenses. "Extraneous" connotes originating outside, external in origin, foreign. Yet, extraneous offenses are entitled to a balancing test. "*Res gestae*" connotes things done, spontaneous, concurrent, an integral part of the happening. Things intermixed, intertwined and blended are not entitled to the balancing test. Query: Gauche?

It is important to note that counsel on appeal did not try the case. We overrule appellant's sole point of error.

We affirm the judgment and sentence below.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent to the majority's holding regarding the admissibility of the pistol and the resulting harm. The majority, although claiming to be guided by *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim.App.1991) (opinion on rehearing) presents no persuasive analysis under it. They simply resort to pre-*Montgomery* cases and terminology.

The majority initially errs in suggesting the inventory of appellant's vehicle was also a search incident to arrest. The record shows that appellant and his companion had been placed under arrest for theft of the oil field equipment and placed into a police vehicle. The arresting officer testified the methamphetamine and the weapon were discovered during an inventory of the vehicle. The state, in its brief, states: "Prior to their departure from the scene of arrest the vehicle previously occupied by the Appellant was inventoried by the Officers." Clearly the items were discovered as a result of an inventory of the impounded vehicle rather than the result of a search contemporaneous to an arrest. This, however, is a meaningless distinction if the proper analysis under the criminal rules of evidence and recent case law is utilized.

While it may be convenient for the majority to characterize the evidence as res gestae of the offense or as a "surrounding circumstance of the offense and the arrest", these characterizations alone are insufficient. There have been several recent cases attempting to explain TEX.R.CRIM. EVID. 401 [1], 404 [2]. In *Mayes v. State*, 816 S.W.2d 79 (Tex.Crim.App.1991) the issue was whether the evidence was relevant that Mayes was being held in the administrative segregation wing of a prison unit when he took two correctional officers hostage. The court discussed the definition of "relevant". It stated: "In order to be included in the expansive definition of 'relevant evidence', proffered evidence must have influence over a consequential fact, i.e., 'any fact that is of consequence to the determination of the action....'" 816 S.W.2d at 84. It went on to say: "... Rule 401 deems 'relevant' any evidence which influences consequential facts, i.e., facts which have something to do with the ultimate determination of guilt or innocence in a particular case." *Id.* The court held, under a strict reading of Rule 401, the nature of administrative segregation was not shown to be a consequential fact and therefore not relevant. The court went on to discuss the "trying cases in a vacuum"

### 1. RULE 401. DEFINITION OF "RELEVANT EVIDENCE"

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

### 2. RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES

(a) **Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) *Character of Victim.* Subject to Rule 412, evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of peaceable character of the victim offered by the prosecution in a

homicide case to rebut evidence that the victim was the first aggressor;

(3) *Character of Witness.* Evidence of the character of a witness, as provided in Rules 607, 608 and 609.

(b) **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

(c) **Character Relevant to Punishment.** In the penalty phase, evidence may be offered by an accused or by the prosecution as to the prior criminal record of the accused. Other evidence of his character may be offered by an accused or by the prosecution. Nothing herein shall limit provisions of Article 37.071, *Code of Criminal Procedure.*

and "leaving juries in the dark" rationale by utilizing the terms "background evidence" and "contextual evidence". The court concluded such "background evidence was meant to be included within the definition of relevancy, not necessarily because it influences a consequential fact, but because it illuminates a circumstance otherwise dimly perceived by the factfinder". *Id.* at 85. However, when the court considered the admissibility of the evidence under Rule 404, it held that "contextual background evidence" which possesses a "character component" is inadmissible.

*Ramirez v. State,* 815 S.W.2d 636 (Tex. Crim.App.1991) was a capital murder case where the trial court admitted a confession which contained evidence of an extraneous transaction. The court discussed whether "getting (stealing) a car" was so interwoven with the facts of the capital murder as to be evidence of the res gestae of the offense. The court held it was not and therefore inadmissible. In light of a remand on another point, the court did not conduct a harm analysis only noting that TEX.R.APP.P. 81(b)(2) was applicable.

*Lockhart v. State,* 847 S.W.2d 568 (Tex. Crim.App.1992) addressed the issue of extraneous offenses during the guilt stage of a capital murder prosecution. The court acknowledged the "context of the offense" rationale and held that evidence of a bank robbery and burglary prior to the murder of the police officer was not "same transaction contextual evidence", but more akin to "general background contextual evidence". The court noted the evidence was never offered as exceptions under Rule 404(b), therefore it was error to admit it. The error was harmless in view of Lockhart's admission that he shot and killed Officer Hulsey while contending it was done in self defense.

*Christopher v. State,* 833 S.W.2d 526 (Tex.Crim.App.1992) was a burglary of a habitation case. It is similar to *Ramirez,* in that it involved the admission of evidence that the car Christopher was driving when he was arrested had been stolen earlier in the day in an aggravated robbery.

The court held the evidence was not admissible as relevant to the issue of probable cause to stop the vehicle since that issue was not contested before the jury. The court also took the opportunity to reiterate its holding in *Couret v. State,* 792 S.W.2d 106 (Tex.Crim.App.1990) which explained and limited the holding in *Maddox v. State,* 682 S.W.2d 563 (Tex.Crim.App.1985), a case relied upon by the majority. The court went on to find reversible error and remanded the case for a harm analysis.

While *Couret* is a pre-*Montgomery* case, it deals with the question of extraneous offenses which are "res gestae of the arrest" or "contemporaneous with the arrest". Couret objected to the introduction of a hypodermic needle found in his pocket at the time of his arrest. The intermediate court of appeals relied upon *Maddox.* The court of criminal appeals held the hypodermic needle inadmissible, reversed the case and remanded it for a harm analysis. While there is language in *Couret* that where possession of a weapon is involved when an offense is committed, such fact is usually relevant as a circumstance of the offense because arguably the weapon is intended by the defendant to be used, exhibited, or simply possessed for protection or threat during the offense, this is merely dictum and the holding is that all extraneous matters must still meet the test that they be relevant to the offense.

Consequently, under the current case law, I would hold the evidence of possession of the pistol was not relevant and therefore it was an abuse of discretion and error to admit it.

During the prosecutor's closing argument at the guilt stage, he stated: "During the course of his inventory, what's [sic] he find? A pistol. A pistol, folks. You can't carry pistols. Users of meth carry pistols." During argument at the punishment stage, the prosecutor argued: "He's asking you for sympathy, but analyze what he's saying, folks. He's got responsibilities at home but he wasn't taking care of his responsibilities when they was [sic] out there in that oil field stealing oil field equipment and carrying pistols." Obvious-

ly the prosecutor felt the possession of a pistol was a factor the jury should consider, both at guilt and at punishment. Thus, even if "contextual background evidence", it possesses a "character component". *Mayes*, 816 S.W.2d at 88. With the introduction of the pistol, the jury was confronted with a defendant who was committing not two, but three offenses that evening: theft, possession of methamphetamine and unlawfully carrying a weapon. I am unable to conclude, beyond a reasonable doubt, that the error made no contribution to the conviction or to the punishment. I would reverse and remand for a complete new trial. Since the majority feels otherwise, I dissent.