TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00429-CR







Gerald Nelson Lee, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 96-630-K368, HONORABLE BURT CARNES, JUDGE PRESIDING







 Gerald Nelson Lee appeals his convictions by a jury for two counts of indecency
with a child and three counts of aggravated sexual assault of a child. The jury assessed as
punishment imprisonment for twenty-five years for each count of aggravated sexual assault of a
child and ten years for each count of indecency with a child. In four issues presented Lee asserts
as error (1) the ex parte procedure by which the district attorney (the "DA") obtained Lee's
medical records; (2) the disclosure of these medical records; and (3) the admission into evidence
of communications between Lee and his psychiatrist. We will affirm.


BACKGROUND

 The charges against Gerald Lee and the subsequent convictions stem from Lee's
conduct with his stepson from the time the boy was six until he was ten years old. In 1991 at the
age of ten, the boy made an outcry to his mother, Melissa, to whom Lee was married at the time. 
His mother failed to report the abuse to police until 1996. Lee continued to live with the boy and
his mother for six months after the 1991 outcry, but the couple had divorced by the time Melissa
reported the abuse in 1996.

 The Round Rock police department began investigating Lee in 1996. Dan Lemay,
the investigator, asked Melissa to call Lee in September 1997 and ask him about his past conduct
with her son and to tape-record the conversation. She complied. The resulting tape reflects Lee's
feelings of guilt and his admissions that "[t]here was a lot, a lot of touching"; that Lee agreed to
help pay for any medical attention the boy might need; and that Lee knew he would go to prison
should the boy choose to press charges. The tape also reflects that, at the time of the telephone
conversation, Lee was undergoing therapy at a Veterans Administration ("VA") hospital for Post
Traumatic Stress Disorder ("PTSD") from his wartime experiences, and that Lee had told his
doctor about his conduct with the boy. (1)

 On the day of the recorded telephone conversation, Investigator Lemay spoke with
Lee and informed him that the conversation had been taped, pointedly telling Lee, "I got you." 
Later that same day, Lee voluntarily committed himself to the VA hospital in Waco. The
following day he met with Dr. Claude Parker, a psychiatrist at the VA hospital. The testimony
of Dr. Parker and the content of Lee's medical records from the Waco VA hospital constitute the
major issues in dispute on this appeal. 

 As a result of an ex parte hearing between the trial court and the State, the trial
court signed an order for disclosure of Lee's medical records. Curiously, though the order was
signed on March 21, 1997, the order was not filed until May 1, 1997, one week after trial had
begun. Lee's pretrial motion to suppress the medical records as fruits of an illegal ex parte order
was denied as to "matters other than drug and alcohol treatment and anything dealing with drug
and alcohol abuse." The trial court reserved ruling on all other pretrial motions until they became
an issue during trial. 

 At trial, Parker testified, over Lee's objections, (2) that Lee admitted "fondling" his
stepson, and, furthermore, that Lee suffered from alcohol and drug addiction. On cross-examination of Lee, the State asked, without objection: "And you admitted to Dr. Parker that you
done [sic] this fondling, didn't you?" Lee admitted using the word "fondling" in conversation
with Dr. Parker, but denied that the fondling occurred in a sexual manner. (3) Testimony of a
student intern, admitted over the same objections as to Dr. Parker's testimony, stated that Lee
asked her "if it were possible that while he was blacked out he could have done something
completely out of character." The testimony of the intern is not at issue on this appeal.

 During jury deliberations, requests were made for a tape player to listen to Lee's
recorded conversation with his wife and for the transcript of the stepson's testimony. The court
provided the jury with the tape and the tape player but informed the jury that the transcript of the
boy's testimony could not be made available. The jury found Lee guilty of multiple counts of
indecency with a child and aggravated sexual assault of a child.


DISCUSSION

The ex parte hearing

 Lee's initial complaint alleges that the ex parte procedure employed by the DA's
office violated federal and state law, as well as Lee's constitutional rights. The State responds that
ex parte procedures are common in the gathering of evidence and cites the procedural analogs of
trial subpoenas, search warrants and wiretaps. 

 Because of the importance of this point, we will restate the particular events which
give rise to the alleged error. Gerald Lee was indicted on October 10, 1996. On March 21, 1997,
in the absence of the defendant or his attorney, the DA presented the trial court with a motion
requesting the release of Lee's medical records from the VA hospital in Waco. The justification
provided in the motion cited the conclusory statement that "for investigatory purposes and for the
purpose of preparation for prosecution, the State has a legitimate interest in obtaining and
inspecting the contents of these records." The order granting the request stated that the court,
after conducting a hearing in chambers, and "having considered the pleading and evidence, finds
that Wilbur Aylor, Assistant District Attorney of Williamson County, Texas, has a legitimate
interest in the Medical Records pertaining to Gerald Nelson Lee." Neither the motion nor the
order were filed with the district clerk until May 1, 1997. (4) The record contains no further direct
evidence regarding the ex parte hearing, including the notable absence of any notation on the
judge's docket sheet indicating the motion, hearing, or order entered. 

 It is axiomatic that, after indictment, a criminal cause proceeds by motion and
judicial order; to insure impartiality in an adversarial proceeding, both sides must be provided
notice before judicial consideration of a motion and entry of an order. Implicit among the
numerous complaints grouped in Lee's first point of error is the contention that the release of
Lee's medical records as a result of an ex parte proceeding constituted reversible error. 
Evidentiary disputes are often the subject of pretrial motions, and are broadly governed by Chapter
28 of the Code of Criminal Procedure: Motions, Pleadings, and Exceptions. See Tex. Code
Crim. Proc. Ann. art. 28.01-28.14 (West 1989). Pretrial proceedings require the presence of the
defendant, or at the least his counsel, (5)
 to insure fairness in the proceeding. See Tex. Code Crim.
Proc. Ann. art. 28.01 (West 1989). 

 Section two of article 28.01 states:


When a criminal case is set for such pretrial hearing, any such preliminary matters
not raised or filed seven days before the hearing will not thereafter be allowed to
be raised or filed, except by permission of the court for good cause shown;
provided that the defendant shall have sufficient notice of such hearing to allow him
not less than 10 days in which to raise or file such preliminary matters. The record
made at such pretrial hearing, the rulings of the court and the exceptions and
objections thereto shall become a part of the trial record of the case upon its merits.



Tex. Code Crim. Proc. Ann. art. 28.01, § 2 (West 1989). Section two clearly contemplates notice
being provided to the opposing party before the merits of a pretrial motion is considered by a trial
court, and establishes that any matter not provided the defendant at least seven days prior to the
pretrial proceeding shall not be allowed absent good cause shown. Furthermore, section two
contemplates the development of a record at pretrial hearings, including exceptions and objections. 
The motion requesting the release of Lee's medical records and the order demanding the release
of those records are dated the same day. Not only was the defendant not provided notice of the
pretrial proceeding seven days before the court considered the merits, formal filing of the motion
and order did not occur until after trial had begun. (6) And, because of the ex parte nature of the
proceeding, no record exists for this Court to examine.

 The State correctly rejoins that ex parte communications are both proper and
necessary in specific statutory situations. The State equates the procedure at issue with the specific
statutory exceptions that allow for obtaining a trial subpoena, a search warrant, or a wiretap. The
State argues that, because search warrants, wiretaps, and trial subpoenas may be lawfully issued
ex parte, there is nothing novel about an ex parte judicial order requiring the disclosure of medical
records. These examples, however, are specific statutory exceptions and contain safeguards to
protect the interests of a defendant--protections which are lacking in the procedure at issue here.

 The reliance by the State on the issuance of subpoenas as a procedural analog fails
of its own terms. See generally Tex. Code Crim. Proc. Ann. art. 24.01-.29 (West 1989 & Supp.
1999). Before the State can issue subpoenas for witnesses in a felony trial, the State must make
a written, sworn application to the clerk for each witness desired. Tex. Code Crim. Proc. Ann.
§ 24.03 (West Supp. 1999). The application must state the name, location, and vocation of each
witness; it must be filed with the clerk; and the contents of the clerk's file are public record, thus
available to both the State and the defendant. Id. There are also statutory provisions that permit
the challenge of a subpoena by the opposing party. 

 Search warrants and wiretaps are both particular exceptions to the general rule that
"the people shall be secure in their persons, houses, papers and possessions from all unreasonable
seizures or searches." Tex. Code Crim. Proc. Ann. art. 1.06 (West 1977); Tex. Const. art. I,
§ 9. Prosecutors and judges are not free to expand upon these specific statutory exceptions to the
general prohibition against ex parte communications between a party and a judge. See United
States Government v. Marks, 949 S.W.2d 320, 325 (Tex. 1997) ("the law in this State, as in most
jurisdictions, looks upon ex parte proceedings with extreme disfavor"); see also Barnes v.
Whittington, 751 S.W.2d 493, 495 n.1 (Tex. 1988) (Texas rules and case law permit ex parte
communications only in extraordinary, emergency situations). Furthermore, the statutes that allow
a magistrate to issue search warrants or wiretaps provide specific procedures to protect a
defendant's rights; each requires, among other things, written applications accompanied by
affidavits that explicitly establish probable cause. See Tex. Code Crim. Proc. Ann. art. 18.01,
.20 (West Supp. 1999). The ex parte hearing at issue failed to meet the minimum safeguards
provided by statute for these two exceptions; there was no specific finding of probable cause, only
the conclusory statement that the State maintained a "legitimate interest" in Lee's medical records. 

 We recognize the practical time constraints put upon both judges and prosecutors,
and the attraction of allowing a suppression hearing determine all potentially contested issues of
evidence. However, we are also mindful that the necessarily close working relationship between
a prosecutor and judge calls for extra attention to proper procedure in order to avoid even the
appearance of impropriety. (7)


An opportunity to be heard may not seem vital when an issue relates only to
technical questions susceptible of demonstrable proof on which evidence is not
likely to be overlooked and argument on the meaning and worth of conflicting and
cloudy data not apt to be helpful. . . . [However], [t]hat a conclusion satisfies one's
private conscience does not attest its reliability. The validity and moral authority
of a conclusion largely depend on the mode by which it was reached. Secrecy is
not congenial to truth-seeking and self-righteousness gives too slender an assurance
of rightness. No better instrument has been devised for arriving at a truth than to
give a person in jeopardy of serious loss notice of the case against him and
opportunity to meet it. Nor has a better way been found for generating the feeling,
so important to a popular government, that justice has been done.


Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 170-172 (1951) (Frankfurter, J. concurring).

 Although we disapprove of the ex parte procedure leading to the judicial order
compelling disclosure of Lee's medical records, we must ultimately conclude that the facts of this
particular situation preclude a finding of reversible error. 


Harm Analysis

 Both constitutional and non-constitutional errors by the trial court are subject to
harm analysis by an appellate court to determine whether the mistake constitutes reversible error. 
Reversible error in criminal cases is governed by Texas Rule of Appellate Procedure 44.2:


44.2 Reversible Error in Criminal Cases.

(a) Constitutional error. If the appellate record in a criminal case reveals
constitutional error that is subject to harmless error review, the court of appeals
must reverse a judgment of conviction or punishment unless the court determines
beyond a reasonable doubt that the error did not contribute to the conviction or
punishment.


(b) Other errors. Any other error, defect, irregularity, or variance that does not
affect substantial rights must be disregarded.


Tex. R. App. P. 44.2. (8) 


 Before applying Texas Rule of Appellate Procedure 44.2 to Lee's first point of
error, it is helpful to discuss Lee's second and third points, namely, that the disclosure of Lee's
medical records violated federal and state law. Federal law provides that records of a patient from
a federal facility pertaining to substance abuse may not be disclosed, except under certain
exceptions--one such exception being pursuant to a court order granted after application showing
good cause. See 42 U.S.C. §§ 290dd-2(b)(2)(C), 290dd-2(c), 299dd-2(a) (1994). Lee complains
that the ex parte hearing failed to establish good cause, and thus the medical records released
pursuant to the court order should never have been disclosed. Similarly, Lee argues that state law
prohibits disclosure of communications between a patient and a professional, and records of the
identity, diagnosis, evaluation, or treatment of a patient must remain confidential, subject to
enumerated exceptions. See Tex. Health & Safety Code Ann. § 611.002 (West 1992). One such
exception includes "any criminal proceeding, as otherwise provided by law." Id. at
§ 611.006(a)(7) (West Supp. 1999).

 Thus, because both federal and state law allow disclosure of medical records subject
to a court order in a criminal proceeding, the validity of the judicial order obtained by the State
controls the disposition of Lee's first three points of error. We have expressed reservations about
the ex parte nature of the procedure by which the order was granted, but the overwhelming weight
of the evidence established by the taped confession of Lee, and the testimony from both his ex-wife and stepson were clearly sufficient to meet a standard of good cause. Thus, any error in the
ex parte procedure utilized by the prosecution was rendered harmless. (9) See Tex. R. App. P. 44.2. 
We overrule Lee's first three points of error.


Privileged Communications

 Lee's final point of error argues that admission of Dr. Parker's testimony that Lee
admitted "fondling" his stepson was error. Lee cites Texas Rule of Criminal Evidence 510: "[a]
communication to any person involved in the treatment or examination of alcohol or drug abuse
by a person being treated voluntarily or being examined for admission to treatment for alcohol or
drug abuse is not admissible." Tex. R. Crim. Evid. 510. Dr. Parker's diagnosis that Lee had a
severe drug and alcohol problem resulted from the same interview in which Lee admitted to the
abuse. However, Lee's purpose for entering the VA hospital is clouded by his denial of a
substance abuse problem, his refusal of treatment for substance abuse, and the timing of his
voluntary admission to the hospital--the same day he was notified of the taped conversation with
his ex-wife. The rule requires that the communication be made by a person being treated
voluntarily for alcohol or drug abuse. See Tatum v. State, 919 S.W.2d 910, 913 (Tex.
App.--Fort Worth 1996, no writ). The trial court was within its discretion to rule that Lee's
intent in admitting himself to the hospital may have been for purposes other than substance abuse. 
We overrule Lee's fourth point of error.


CONCLUSION

 Having overruled Lee's four points of error, we affirm the judgment of the trial
court.



 

 Mack Kidd, Justice

Before Justices Kidd, Powers* and Davis**

Affirmed

Filed: January 28, 1999

Do Not Publish














* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).


** Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Lee's psychiatrist alluded to in the tapes, Dr. Frank Floca, testified at trial about the 
symptoms of PTSD, and about how these symptoms might account for the admissions of guilt
contained on the tape. Though Dr. Floca recognized that the admissions on the tape had a sexual
connotation, he testified in his opinion that Lee had not molested the boy.
2. Lee objected to Parker's testimony as violations of Tex. Health & Safety Code Ann.
§§ 576.005, 611.002, .004, .006 (West 1992 & Supp. 1999); 42 U.S.C. 290dd-2(c) (1994); and
Tex. R. Crim. Evid. 510.
3. Lee explained that the fondling occurred as a result of pushing the boy off his back.
4. We note that the State timely filed several subpoenas seeking the attendance of witnesses
from the Waco VA hospital, including Dr. Parker. Thus, a diligent search of the clerk's file
would have revealed the State's interest in Waco VA hospital personnel and the medical records
at the Waco VA hospital.
5. Some cases have held the absence of defendant at pretrial hearings where his interests were
protected by counsel to be harmless error. See Adanandus v. State, 866 S.W.2d 210 (Tex. Crim.
App. 1993) (absence of defendant at pretrial proceeding regarding defendant's motion to strike
jury panel was harmless beyond a reasonable doubt where defendant was zealously represented
at proceeding by defense attorney).

6. "Each clerk of the district or county court shall receive and file all papers and exhibits in
respect to criminal proceedings, issue all process in such cases, and perform all other duties
imposed upon them by law." Tex. Code Crim. Proc. Ann. art. 2.21(a) (West Supp. 1999).
7. See Tamminen v. State, 644 S.W.2d 209, 217 (Tex. App.--San Antonio 1982), rev'd on
other grounds, 653 S.W.2d 799, 802 (Tex. Crim. App. 1983) (adopting the language of the San
Antonio court that improper ex parte proceedings between prosecutor and trial court "cannot be
tolerated in the criminal justice system."); see also Walter W. Steele, Jr., Unethical Prosecutors
and Inadequate Discipline, 38 Southwestern L.J. 965, 972-73 (1984).
8. The official comments following the rule indicate that 44.2(a) was amended to limit its
standard of review to constitutional errors that are subject to harmless error review. Paragraph
44.2(b) is new and is taken from Federal Rule of Criminal Procedure 52(a), without substantive
change. See Tex. R. App. 44, comment to 1997 change.
9. We note Lee was given an opportunity to object to the disclosure of the medical records
before any information was allowed in the record. We further note that the medical records
themselves were never introduced into evidence at trial. Their only use, if at all, concerned the
examination of Dr. Parker at trial.



line"> 

 Mack Kidd, Justice

Before Justices Kidd, Powers* and Davis**

Affirmed

Filed: January 28, 1999

Do Not Publish














* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).


** Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Lee's psychiatrist alluded to in the tapes, Dr. Frank Floca, testified at trial about the 
symptoms of PTSD, and about how these symptoms might account for the admissions of guilt
contained on the tape. Though Dr. Floca recognized that the admissions on the tape had a sexual
connotation, he testified in his opinion that Lee had not molested the boy.
2. Lee objected to Parker's testimony as violations of Tex. Health & Safety Code Ann.
§§ 576.005, 611.002, .004, .006 (West 1992 & Supp. 1999); 42 U.S.C. 290dd-2(c) (1994); and
Tex. R. Crim. Evid. 510.
3. Lee explained that the fondling occurred as a result of pushing the boy off his back.
4. We note that the State timely filed several subpoenas seeking the attendance of witnesses
from the Waco VA hospital, including Dr. Parker. Thus, a diligent search of the clerk's file
would have revealed the State's interest in Waco VA hospital personnel and the medical records
at the Waco VA hospital.
5. Some cases have held the absence of defendant at pretrial hearings where his i