

# NUMBER 13-12-00175-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LAKIM MINTRELL GUILD,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

On appeal from the 24th District Court
of Jackson County, Texas.

# MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Valdez and Justices Garza and Longoria**
**Memorandum Opinion on Rehearing by Justice Longoria**

A jury found Lakim Mintrell Guild guilty of third-degree felony assault-family violence, and after finding two enhancement paragraphs to be true, the trial court sentenced him to serve 50 years in prison. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A)

(West 2011). Guild now appeals his conviction by three issues. For the reasons set forth below, we affirm.[1]

## I. *BATSON* CHALLENGE

In his first issue, Guild argues that the trial court erred in denying his *Batson* challenge. *See Batson v. Kentucky*, 476 U.S. 79, 85 (1986).

## A. Applicable Law

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and article 35.261 of the Texas Code of Criminal Procedure prohibit the use of peremptory challenges to exclude venire members on the basis of race. *See* U.S. CONST. amend. XIV, § 1; TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006); *Batson*, 476 U.S. at 85. In the face of perceived purposeful discrimination, the defendant may request a *Batson* hearing to address the challenge. TEX. CODE CRIM. PROC. ANN. art. 35.261(a).

Trial courts follow a three-step process when resolving *Batson* challenges. *Snyder v. Louisiana*, 552 U.S. 472, 476 (2008); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). First, the defendant must make a prima facie showing that the State exercised a peremptory challenge on the basis of race. *Snyder*, 552 U.S. at 476; *Young*, 283 S.W.3d at 866. Second, if the prima facie showing has been made, the

---

[1] On February 28, 2013, this Court issued a memorandum opinion and judgment affirming Guild's conviction. *See Guild v. State*, No. 13-12-00175-CR, 2013 Tex. App. LEXIS 1984, at *1 (Tex. App.—Corpus Christi Feb. 18, 2013, no pet. h.) (mem. op., not designated for publication). Subsequently, on March 14, 2013, Guild filed a motion for rehearing, which this Court denied in a supplemental memorandum opinion issued on June 13, 2013. *See Guild v. State*, No. 13-12-00175-CR, 2013 Tex. App. LEXIS 7329, at *7 (Tex. App.—Corpus Christi June 13, 2013, no pet. h.) (supp. mem. op., not designated for publication). Thereafter, on June 26, 2013, Guild filed a second motion for rehearing. The Court, having fully considered Guild's second motion for rehearing and the contentions made therein, is of the opinion that the motion should be denied. Accordingly, Guild's second motion for rehearing is denied. Nevertheless, we withdraw our memorandum opinion and judgment of February 28, 2013 and our supplemental memorandum opinion of June 13, 2013 and issue this memorandum opinion and judgment in their place.

burden of production shifts to the State to articulate a race-neutral reason for its strike. *Snyder*, 552 U.S. at 478; *Young*, 283 S.W.3d at 866. A reason is deemed race-neutral if no discriminatory intent is inherent in the explanation given. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). In the third and final step, the trial court determines whether the defendant has carried his burden to prove purposeful discrimination. *Snyder*, 552 U.S. at 477; *Young*, 283 S.W.3d at 866. Throughout the challenge, the burden of persuasion remains with the defendant, who may continue to rebut the prosecutor's explanations before the trial court decides the *Batson* challenge. *Moore v. State*, 265 S.W.3d 73, 78 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Purkett*, 514 U.S. at 768). The defendant must prove by a preponderance of the evidence that the allegations of purposeful discrimination were true in fact and that the prosecutor's reasons were merely a sham or pretext. *Watkins v. State*, 245 S.W.3d 444, 451–52 (Tex. Crim. App. 2008).

**B. Standard of Review**

"On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder*, 552 U.S. at 477. To hold that a decision was "clearly erroneous," we must be left with a "definite and firm conviction that a mistake has been committed." *Moore*, 265 S.W.3d at 78 (quoting *Goldberg v. State*, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). Appellate courts must give great deference to credibility and demeanor determinations made by the trial court in connection with a *Batson* inquiry. *Snyder*, 552 U.S. at 487 (observing that "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge"). We may not substitute our opinion for the trial court's factual

assessment of the neutrality of the prosecutor's explanation for exercising strikes. *Gibson v. State*, 144 S.W.3d 530, 534 n.5 (Tex. Crim. App. 2004); *see Snyder*, 552 U.S. at 477 (holding "in the absence of exceptional circumstances," deference should be given to trial court).

We view the evidence in the light most favorable to the trial court's ruling. *Young*, 283 S.W.3d at 866. We focus on the genuineness rather than on the reasonableness of the State's asserted race-neutral reason. *Gibson*, 144 S.W.3d at 533–34. In evaluating the genuineness of the State's proffered race-neutral reason, we consider "all of the circumstances that bear upon the issue of racial animosity[.]" *Snyder*, 552 U.S. at 478 (citing *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005)).

## C. Proceedings

Guild made a *Batson* challenge after the State struck Sterling Watson, the only black venireman on the jury panel. The trial court immediately inquired whether the State had a race-neutral explanation. The State responded to the challenge as follows:

| [Prosecutor]: | Your honor, we do have a race-neutral reason why we struck Mr. Sterling Watson, number three, and that is because we have prosecuted over 13 different Watson's [sic] in this county and we believe that they are related to Sterling Watson. That's our basis for the strike. |
|---|---|
| The Court: | Anything else on that? |
| [Defense Counsel:] | Nothing that we know about, Your Honor. |
| [Prosecutor:] | No. |
| The Court: | The *Batson* challenge is denied. |

**D. Discussion**

Once Guild made his *Batson* challenge, the trial court immediately inquired of the State whether it had a non-discriminatory purpose for the strike; therefore, as the reviewing court, we must assume that Guild "satisfied his step-one obligation to make a prima facie case of purposeful discrimination and address only the second and third steps." *Watkins*, 245 S.W.3d at 447.

In step two, "the prosecutor . . . must articulate a neutral explanation related to the particular case to be tried." *Batson*, 476 U.S. at 98. A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. *See Hernandez v. New York*, 500 U.S. 352, 360 (1991). The prosecutor's proffered explanation in this case—that she struck juror number three because she believed he was related to thirteen other Watsons who have been prosecuted in Jackson County—was not an overt expression of discriminatory intent. *See id.* ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."). Because "the second step of the *Batson* challenge process does not demand an explanation that is persuasive, or even plausible," and since the State gave a race-neutral explanation and did not admit that racial discrimination was its real motive, we must conclude that the State met its burden. *Nieto v. State*, 365 S.W.3d 673, 679 (Tex. Crim. App. 2012).

Finally, in step three, the "ultimate plausibility" of the explanation is considered. *Watkins*, 245 S.W.3d at 447. Here, we recognize that judicial review of the exercise of a peremptory challenge is not limited to situations where there is a blatant constitutional violation, such as where a prosecutor states "I struck that prospective juror because he

5

is black." *Whitsey v. State*, 796 S.W.2d 707, 713 (Tex. Crim. App. 1989). "Limiting our review to the exercise of such a challenge ignores the reality that the peremptory challenge system permits discrimination by those 'who are of a mind to discriminate.'" *Id*. Thus, "the trial judge cannot merely accept . . . [the prosecutor's] explanation[] at face value and end the *Batson* inquiry." *Id*. at 716. "The trial judge must determine whether the[] facially neutral explanation[ was] . . . contrived to avoid admitting acts of discrimination." *Id*. "This evaluation by the trial judge is necessary because it is possible that an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror." *Keeton v. State*, 749 S.W.2d 861, 868 (Tex. Crim. App. 1988) (quotations omitted).

This Court is deeply troubled by the suggestion that the State struck the only black member of the jury panel based on his race. However, the ultimate question is "whether purposeful discrimination was established." *Id*. at 870. "As the party making the *Batson* challenge, [Guild] . . . had the burden to show that the explanation given was merely a pretext for discrimination." *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). After the State gave a neutral reason for the strike, defense counsel offered no rebuttal, and it is well settled that "a party's failure to offer any real rebuttal to a proffered race neutral explanation can be fatal to his claim." *Id*.

On appeal, Guild argues that the State treated Watson differently because he was black, but that contention has not been proven. *See Watkins*, 245 S.W.3d at 448 ("In assaying the record for clear error, *vel non*, the reviewing court should consider the entire record of voir dire; it need not limit itself to arguments or considerations that the

6

parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record."). First, Guild has never taken issue with the State's assertion that Watson was related to thirteen other people with the same last name. Accordingly, this Court has no basis to find that assertion to be false. Second, if Watson was, in fact, related to thirteen other people with the same last name who had been previously prosecuted in Jackson County, then he was dishonest in voir dire when he indicated that none of his family had been prosecuted. Third, Guild has not identified any other member of the jury panel who answered dishonestly during voir dire and was not struck by the State. Therefore, Guild has failed to show that the State treated Watson differently because he was black.

*Batson* was intended to promote equal protection under the law, not to cloak discrimination with false legitimacy. As our sister court once remarked:

> We would emphasize that in the trial of any case, it is essential not only that justice be done, but also that justice appear to be done. Our criminal justice system is already burdened with too high a degree of public skepticism about its fairness. To avoid further erosions of confidence that our courts do, indeed, treat all litigants with equal fairness, judges and prosecutors alike must keep themselves, like Caesar's wife, above suspicion in which their fairness and integrity could appear to be compromised.

*Tamminen v. State*, 644 S.W.2d 209, 218 (Tex. App.—San Antonio 1982), *reversed*, 653 S.W.2d 799 (Tex. Crim. App. 1983).

Guild failed to rebut the State's reason for the strike. This precludes a finding of purposeful discrimination. *See Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003) (affirming trial court's ruling because "appellant did not attempt to rebut the State's reasons"). Although this case involves a suggestion of racial discrimination, without properly developed evidence before this Court, we must defer to the trial court's

7

ruling that there was no purposeful discrimination by the State. Accordingly, Guild's first issue is overruled.

## II. SUFFICIENCY OF THE EVIDENCE

In his second issue, Guild argues that the evidence is insufficient to support his conviction because the State failed to prove that he was previously convicted of committing an assault against a person who was his household member.

### A. Applicable Law

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quotations omitted).

### B. Discussion

Guild contends that the State failed to prove that he was living with the complainant at the time of the previous offense; however, only a "household" association or relationship under section 71.005 is defined by the parties living together. *See* TEX. FAM. CODE ANN. § 71.005 (West 2008). In the indictment in this case, the State alleged that the complainant in the previous offense was Guild's "family and household member." *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (incorporating by reference TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005) (defining "dating," "family," and "household"). And "[i]t is well established that the State may plead in the

8

conjunctive and charge in the disjunctive." *See Cada v. State*, 334 S.W.3d 766, 768 (Tex. Crim. App. 2011). Therefore, in this case, the hypothetically correct jury charge for the offense would list the statutory alternatives alleged by the State in the disjunctive, as "family or household member." *See id.* Moreover, if the proof shows either one of those statutory alternative elements beyond a reasonable doubt, then the evidence is sufficient to support a conviction. *See id.*

On appeal, Guild has failed to challenge the sufficiency of the evidence to prove that he had a "family" relationship or association with the complainant. "Family" is defined without regard to whether the parties are living together. *See* TEX. FAM. CODE ANN. § 71.003 (West 2008). Accordingly, even if we were to agree with Guild that the State failed to prove that he was living with the complainant (i.e., that they had a section 71.005 "household"" relationship or association), we would still have to affirm the conviction based on the unchallenged statutory alternative finding that does not require the parties to be living together (i.e., a section 71.003 "family" relationship or association). *See Cada*, 334 S.W.3d at 771 ("Thus an indictment might contain allegations that the defendant retaliated against the complainant because he was 'a public servant, witness, prospective witness, and informant,' and if the proof shows any one of those statutory alternative elements beyond a reasonable doubt, then the evidence is sufficient to support a conviction."). Therefore, we overrule Guild's second issue.

### III. SIMILARITY OF OFFENSES

In his third issue, Guild contends that his previous conviction for domestic abuse battery in Louisiana is not equivalent to a conviction for an assault offense under

Chapter 22 of the Texas Penal Code. We disagree. Under Louisiana law, "battery is the intentional use of force or violence committed without the consent of the victim." LA. REV. STAT. ANN. 14:35.3. This is substantially similar to assault under Section 22.01(a)(3) of the Texas Penal Code, which makes it a Class A misdemeanor "to intentionally or knowingly cause physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE ANN. § 22.01(a)(3), (f)(2). Therefore, the State was able to use Guild's prior conviction for domestic abuse battery in Louisiana to prove a previous assault offense for purposes of establishing third-degree felony assault-family violence. *See id.* § 22.01(b)(2)(A), (f)(2). Accordingly, we overrule Guild's third issue.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of August, 2013.